## No. 20-2494

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

FERISSA TALLEY, PLAINTIFF,

JACK R.T. JORDAN,

CONTEMNOR/APPELLANT,

v.

UNITED STATES DEPARTMENT OF LABOR,

DEFENDANT/APPELLEE.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION

BEFORE THE HONORABLE BETH PHILLIPS, CHIEF U.S. DISTRICT COURT AND THE
HONORABLE ORTRIE D. SMITH, SENIOR U.S. DISTRICT JUDGE

# BRIEF FOR APPELLEE

TIMOTHY A. GARRISON
UNITED STATES ATTORNEY

JEFFREY P. RAY
DEPUTY UNITED STATES ATTORNEY

UNITED STATES ATTORNEY'S OFFICE
WESTERN DISTRICT OF MISSOURI

CHARLES EVANS WHITTAKER COURTHOUSE
400 EAST NINTH STREET, SUITE 5510
KANSAS CITY, MO 64106-2149

ATTORNEYS FOR APPELLEE

# I.   Summary of the case

Appellant herein and contemnor below, Jack R.T. Jordan ("Jordan"), seeks a reversal of monetary sanctions and filing restrictions imposed on him by the district court[1] in a series of unreported decisions. The district court orders arose out of Jordan's legal representation of Ferissa Talley ("Talley"), plaintiff below, in a FOIA action brought against the United States Department of Labor ("DOL"), appellee herein and defendant below.   The district court imposed monetary sanctions against Jordan after finding that he had asserted claims in pleadings (namely, alleging criminal conduct by the district court) for an improper purpose and without evidentiary support.   Subsequently, the district court also imposed filing restrictions on Jordan after finding that he was engaged in frivolous and abusive motion practice.

This appeal does not present unusual issues regarding district court authority to sanction and control the conduct of attorneys appearing before the district court. Moreover, this appeal does not involve matters of first impression in this Circuit, nor does it involve significant legal matters wherein there is a split of authority among the federal Circuits.   As such, the DOL is prepared to waive oral argument from the parties on this appeal.

---

[1]       The Honorable Beth Phillips, Chief District Judge, and the Honorable Ortrie D. Smith, Senior District Judge, both with the United States District Court for the Western District of Missouri.

i

## II.   Table of contents

I.    Summary of the case..................................................................................i

II.    Table of contents.................................................................................. ii

III.    Table of authorities ..............................................................................v

    A.    Cases ...........................................................................................v

    B.    Statutes  .....................................................................................ix

    C.    Other authorities cited  ...............................................................x

IV.    Jurisdictional statement ........................................................................1

V.    Statement of the issues.........................................................................3

VI.    Statement of the case ...........................................................................5

    A.    Facts............................................................................................5

        1.    The Powers email.............................................................5

        2.    Jordan's federal court FOIA litigation........................6

            a.    Jordan's DC Lawsuit ..........................................6

            b.    Jordan's WDMO Lawsuit....................................8

    B.    Procedural history and relevant rulings.............................10

        1.    The filing of and initial pleadings in Talley's FOIA lawsuit ..............................................................10

        2.    Jordan's November 19, 2019 filing of the MOTION TO REMEDY JUDGE SMITH'S LIES AND CRIMES AND LIFT THE STAY OR DISQUALIFY JUDGE SMITH and resulting show cause order with referral to another district judge ...................13

## II. Table of contents
## (*continued*)

3. The district court proceedings on the show cause order and the district court's first sanctions order entered on March 4, 2020 ...........................................................................14

4. The district court's second sanctions order entered on July 1, 2020 ..............................................................................19

5. The district court's third sanctions order entered on July 9, 2020 ................................................................................22

6. The district court's fourth sanctions order entered on July 20, 2020 ..............................................................................23

VII. Summary of the argument ...........................................................25

VIII. Argument ......................................................................................26

A. Standard of appellate review ............................................26

B. The district court had jurisdiction and authority to impose monetary sanctions and filing restrictions on Jordan .........................27

C. The district court did not violate the United States Constitution in imposing monetary sanctions and filing restrictions on Jordan. ....................................................................30

1. Jordan was provided adequate notice and an opportunity-to-be-heard so as to comport with procedural due process.......31

2. The district court's sanctions orders did not violate Jordan's right to free speech or his right to petition the government for a redress of grievances ................41

Appellate Case: 20-2494     Page: 4     Date Filed: 01/19/2021 Entry ID: 4995647

## II.   Table of contents
## (*continued*)

D.      The district court did not err in imposing monetary sanctions and filing restrictions on Jordan in that the district court properly found that Jordan's filings were presented for an improper purpose, contained factual contentions that had no evidentiary support and were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, and that Jordan was engaged in frivolous and abusive motion practice .....................................................45

IX.    Conclusion ..................................................................................54

X.     Certificate of compliance............................................................56

XI.    Certification of electronic filing of the BRIEF FOR APPELLEE.......................57

XII.   Certification of mailing of paper copies of the BRIEF FOR APPELLEE ..........58

Appellate Case: 20-2494     Page: 5     Date Filed: 01/19/2021 Entry ID: 4995647

# III. Table of authorities

## A. Cases

Page(s)

*Akins v. Neb. Court of Appeals*, 607 Fed. Appx. 606 (8th Cir. 2015)
(*per curium*) ...................................................................51

*Anderson v. Dunn*, 6 Wheat. 204, 5 L.Ed. 242 (1821) ...........................29

*Bill Johnson's Rest., Inc. v. N.L.R.B.*, 461 U.S. 731,
103 S. Ct. 2161 (1983) ....................................................3, 43

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123 (1991) ...................*passim*

*Cheek v. Doe*, 828 F.2d 395 (7th Cir. 1987) ..........................................43

*Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004 (8th Cir. 2006) ........... 45-46, 47

*Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331 (3d Cir. 2001) ....................2

*Coonts v. Potts*, 316 F.3d 745 (8th Cir. 2003) ...................................3, 31

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,
110 S.Ct. 2447 (1990) ........................................................26, 49

*Crookham v. Crookham*, 914 F.2d 1027 (8th Cir. 1990) ........................................2

*Cunningham v. Hamilton County, Ohio*, 527 U.S. 198,
119 S.Ct. 1915 (1999) ........................................................2

*Day v. Day*, 510 U.S. 1, 114 S.Ct. 4 (1993) (*per curiam*) .................................4, 52

*Dieser v. Cont'l Cas. Co.*, 440 F.3d 920 (8th Cir. 2006) ........................................2

*Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987) ............................................39

*Eisenberg v. Univ. of N.M.*, 936 F.2d 1131 (10th Cir.1991) ..................................39

v

*Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S. Ct. 2720 (1991) ..............42

*Geske & Sons, Inc. v. N.L.R.B.*, 103 F.3d 1366 (7th Cir. 1997) ...........................43

*Harlan v. Lewis*, 982 F.2d 1255 (8th Cir. 1993) ....................................................37

*Immerso v. U.S. Dep't of Labor*, No. 19CV3777NGGVMS (E.D.N.Y.) ..............21

*In re Engle Cases*, 283 F.Supp. 3d 1174 (M.D. Fla. 2017) ............................50, 51

*In re Gleason*, 492 Fed. Appx. 86 (11th Cir. 2012) ...............................................54

*In re Green*, 598 F.2d 1126 (8th Cir.1979) ...........................................................48

*In re Kelly*, 808 F.2d 549 (7th Cir. 1986) ..............................................................44

*In re Leone*, 50 F.3d 15 [Table], 1995 WL 108974 (9th Cir. 1995) .....................43

*In re Reed*, 888 F.3d 930 (8th Cir. 2018) ..............................................................26

*In re Yehud-Monosson USA, Inc.*, 472 B.R. 868 (D. Minn. 2012) .......................39

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821,
    114 S. Ct. 2552 (1994) .................................................................................41

*Isaacson v. Manty*, 721 F.3d 533 (8th Cir. 2013) ........................... 3, 32, 39-40, 50

*Jordan v. Director, Office of Workers' Comp. Programs,*
    *Department of Labor*, 138 S. Ct. 1609 (Mem.) (2018) ..................................6

*Jordan v. U.S. Dep't of Labor*, 2018 WL 5819393, slip op.
    (D.C. Cir. Oct. 19, 2018) ..............................................................................7

*Jordan v. U.S. Department of Labor*, 273 F. Supp. 3d 214 (D.D.C. 2017) ............7

*Jordan v. U.S. Dep't of Justice*, No. CV 17-2702 (RC) (D.D.C.) .........................21

Appellate Case: 20-2494     Page: 7     Date Filed: 01/19/2021 Entry ID: 4995647

*Jordan v. U.S. Dep't of Labor*, 2018 WL 6591807, slip op.
(W.D. Mo. Dec. 14, 2018) ...............................................................9

*Jordan v. U.S. Dep't of Labor*, 2019 WL 2665052, slip op.
(W.D. Mo. June 27, 2019) .............................................................9

*Jordan v. U.S. Dep't of Labor*, 331 F.R.D. 444 (D.D.C. 2019), *aff'd sub nom.*
*Jordan v. United States Dep't of Labor*, 2020 WL 283003
(D.C. Cir. Jan. 16, 2020) ...............................................................8

*Jordan v. U.S. Dep't of Labor*, 794 Fed. Appx. 557 (8th Cir. 2020)
(*per curiam*) ...............................................................................10

*Kelley v. Boettcher*, 82 F. 794, 27 C.C.A. 177 (8th Cir. 1897) ........................ 46-47

*King v. Fleming*, 899 F.3d 1140 (10th Cir. 2018) ...............................................3, 43

*Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809 (9th Cir. 2012) ...................2

*Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332
(11th Cir. 2002) ...........................................................................52

*Matter of Cook*, 49 F.3d 263 (7th Cir. 1995) .......................................................53

*Matter of Westfall*, 808 S.W.2d 829 (Mo. 1991) ........................................... 48-49

*MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620 (8th Cir. 2003) ........................46, 47

*Miller v. Cardinale (In re DeVille)*, 361 F.3d 539 (9th Cir. 2004) ......................39

*Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516 (9th Cir. 1983) .................39

*Nat. Gas Pipeline Co. of Am. v. Energy Gath. Inc.*, 2 F.3d 1397
(5th Cir. 1993) ............................................................................43

*Norsyn, Inc. v. Desai*, 351 F.3d 825 (8th Cir. 2003) .............................................47

Appellate Case: 20-2494    Page: 8    Date Filed: 01/19/2021 Entry ID: 4995647

*Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981) ..............................................................52

*Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794
    (8th Cir. 2005) ..............................................................32

*Sassower v. Carlson*, 930 F.2d 583 (8th Cir. 1991) (*per curium*) ..................51-52

*Schlafly v. Eagle Forum*, 970 F.3d 924 (8th Cir. 2020) ..............................4, 29, 48

*Shire LLC v. Abhai, LLC*, 298 F. Supp. 3d 303 (D. Mass. 2018) .........................50

*State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436 (2016) .........3, 29

*Stebbins v. Stebbins*, 575 Fed. Appx. 705 (8th Cir. 2014) ....................................51

*Stevenson v. Union Pac. R. Co.*, 354 F.3d 739 (8th Cir. 2004) ...........................45

*Truczinskas v. Director, Office of Workers' Comp. Programs*,
    699 F.3d 672 (1st Cir. 2012) ..............................................................5

*United States v. Gonzalez-Lopez*, 403 F.3d 558 (8th Cir. 2005) ..........................26

*Vallejo v. Amgen, Inc.*, 903 F.3d 733 (8th Cir. 2018) ...........................................26

*Wayland v. McVay (In re TByrd Enters.), LLC*,
    354 Fed. Appx. 837 (5th Cir. 2009) ..............................................................39

Appellate Case: 20-2494   Page: 9   Date Filed: 01/19/2021 Entry ID: 4995647

## B. Statutes

Page(s)

5 U.S.C. § 552 ........................................................................................6

18 U.S.C. § 3006A ...............................................................................28

28 U.S.C. § 530B ..................................................................................28

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 1294 ....................................................................................2

28 U.S.C. § 1654 ..................................................................................28

28 U.S.C. § 1927 ..................................................................................28

28 U.S.C. § 2071 ..................................................................................28

33 U.S.C. §§ 901, *et seq.* .....................................................................5

42 U.S.C. §§ 1651, *et seq.* ...................................................................5

Appellate Case: 20-2494    Page: 10    Date Filed: 01/19/2021 Entry ID: 4995647

## C.  Other authorities cited

Page(s)

5A ARTHUR R. MILLER, MARY KAY KANE AND A. BENJAMIN SPENCER,
 FEDERAL PRACTICE & PROCEDURE § 1336 (4th ed. 2010) ..........................36

8TH CIR. R. APP. P. 28A ..............................................................56, 57, 58

8TH CIR. R. APP. P. 30A ....................................................................1

FED. R. APP. P. 25 ........................................................................58

FED. R. APP. P. 28 .................................................................56, 57, 58

FED. R. APP. P. 30 ..........................................................................1

FED. R. APP. P. 32 ........................................................................56

FED. R. BANKR P. 9011 ...................................................................40

FED. R. CIV. P. 11 ....................................................................*passim*

Fed. R. Civ. P. 11 [Advisory Committee Notes] ............................................38, 39

FED. R. CIV. P. 37 ......................................................................2, 28

FED. R. CIV. P. 83 .........................................................................28

FED. R. CRIM. P. 16 .......................................................................37

FED. R. CRIM. P. 42 ....................................................................37, 39

Fred C. Zacharias & Bruce A. Green, *Federal Court Authority to
 Regulate Lawyers: A Practice in Search of a Theory*,
 56 VAND. L. REV. 1303 (2003) ........................................................27-28, 29

Appellate Case: 20-2494    Page: 11    Date Filed: 01/19/2021 Entry ID: 4995647

Judith A. McMorrow, *et al.*, *Judicial Attitudes Toward Confronting
    Attorney Misconduct: A View from the Reported Decisions,*
    32 Hofstra L. Rev. 1425 (Summer 2004) ...............................................27, 52

Margaret Tarkington, *The Truth Be Damned: The First Amendment,
    Attorney Speech, and Judicial Reputation*, 97 GEO. L.J. 1567
    (August 2009) ...............................................................................................42

MO. SUP. CT. R. 4-3.3 .........................................................................................16

MO. SUP. CT. R. 4-8.2 ...................................................................16, 18, 32, 48

MO. SUP. CT. R. 4-8.4 .........................................................................................16

MODEL RULES OF PROF. CONDUCT (ABA 2007) ...................................................42

Teri R. Day, *Speak No Evil: Legal Ethics v. the First Amendment*,
    32 J. LEG. PROF. 161-98 (Spring 2008) .......................................................42

U.S. CONST. amend. I ..........................................................................................30

U.S. CONST. amend. V .....................................................................................30, 37

U.S. CONST. amend. VI .......................................................................................37

W. Bradley Wendel, *Free Speech for Lawyers*, 28 HASTINGS CONST. L.Q.
    301 (Winter 2001) .........................................................................................42

W.D. MO. LOC. R. 1.1 .........................................................................................28

W.D. MO. LOC. R. 7.0 .........................................................................................12

W.D. Mo. Loc. R. 83.6 ..................................................................................*passim*

W.D. MO. LOC. R. 83.9 ........................................................................................11

Appellate Case: 20-2494   Page: 12   Date Filed: 01/19/2021 Entry ID: 4995647

# VI. Jurisdictional statement

Talley initiated her federal court action when she filed a COMPLAINT under FOIA on June 26, 2019. App. 1-13 [Doc. 1].[2] On October 17, 2019, Jordan entered an appearance as legal counsel on Talley's behalf. App. 1-13 [Doc. 8].

On March 4, 2020, the district court entered an order imposing a sanction of $1,000 on Jordan and directing the Clerk of the Court to send a copy of the order to the Kansas Bar Association (with whom Jordan was licensed). Supp. App. 116-29. On July 1, 2020, the district court entered a second order that "[Jordan was] prohibited from filing anything further in this matter without the Court's prior approval." App. 37. On July 9, 2020, the district court entered a third order directing the Clerk of the Court to send certain pleadings and court orders to the Kansas Bar Association. Supp. App. 130-31. Finally, on July 20, 2020, the district court entered a fourth order sanctioning Jordan an additional $500 and directing the Clerk of the Court to send the order to the Kansas Bar Association and the New York Bar (with whom Jordan was also licensed). Supp. App. 134-40.

---

[2] Citations ("App.") herein are to the district court orders included in Jordan's APPELLANT'S APPENDIX. Further, pursuant to FED. R. APP. P. 30 and 8TH CIR. R. APP. P. 30A(b)(3), the DOL is filing contemporaneously with this brief, its APPELLEE'S SUPPLEMENTAL APPENDIX (citations herein are to "Supp. App."), which includes some additional district court filings not included in APPELLANT'S APPENDIX. In the case of district court filings that are referred to herein solely for background and context, citations are only to the district court's electronic docket sheet (which is included in APPELLANT'S APPENDIX at App. 1-13) with additional reference to the specific document number as shown on the docket sheet.

1

On July 13, 2020, the district court entered an order granting the DOL's motion for summary judgment and denying Talley's motion for judgment on the pleadings with regard to the underlying substantive FOIA claim. App. 42-68. That same day, the district court entered its CLERK'S JUDGMENT. App. 1-13 [Doc. 103]. Sill later that day, Jordan filed a NOTICE OF APPEAL[3] (App. 1-13 [Doc. 105]), seemingly[4] investing this Court with appellate jurisdiction over the district court's aforementioned sanctions orders. 28 U.S.C. §§ 1291, 1294(1).

---

[3]    On July 20, 2020, Jordan filed an AMENDED NOTICE OF APPEAL. App. 1-13 [Doc. 115].

[4]    Under this Court's prior precedent, there is some ambiguity as to whether attorney sanctions under Rule 11 and similar bases are immediately appealable "final orders." *Compare Crookham v. Crookham*, 914 F.2d 1027, 1029 n.4 (8th Cir. 1990) (noting that "Rule 11 sanctions . . . are immediately appealable as a final decision under § 1291, and under the [ ] collateral order doctrine"), *with Dieser v. Cont'l Cas. Co.*, 440 F.3d 920, 924 (8th Cir. 2006) (describing Rule 11 sanctions as "clearly interlocutory" and stating that "a belief that such a decision is a final judgment would not be reasonable"). In *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 119 S.Ct. 1915 (1999), the Supreme Court held that attorney sanctions under FED. R. CIV. P. 37 are not "final orders" and are not immediately appealable under the collateral order doctrine. *Id*. at 204, 119 S.Ct. at 1920. Although this Court has not addressed the effect of *Cunningham* on Rule 11 sanctions, other Circuits have held that the logic applies to Rule 11 sanctions and that such sanctions do not fall within the collateral order doctrine. *See, e.g.*, *Klestadt & Winters, LLP v. Cangelosi*, 672 F.3d 809, 819 (9th Cir. 2012); *Comuso v. Nat'l R.R. Passenger Corp.*, 267 F.3d 331, 339 (3d Cir. 2001) (concluding that *Cunningham* broadly "rejected a case-by-case approach in deciding whether an order was separate from the merits of the litigation in favor of a *per se* rule that sanctions orders are inextricably intertwined with the merits"). With the understanding that this Court still must and will examine its own jurisdiction, the DOL is not affirmatively alleging herein that Jordan was jurisdictionally dilatory in seeking appellate review of any of the district court's sanctions orders.

2

# VII. Statement of the issues

**A.  The district court had the authority and jurisdiction to impose sanctions on Jordan.**

FED. R. CIV. P 11

*State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436 (2016)


**B.  The district court afforded Jordan adequate and Constitutionally sufficient due process prior to imposing sanctions.**

FED. R. CIV. P. 11

*Coonts v. Potts*, 316 F.3d 745 (8th Cir. 2003)

*Isaacson v. Manty*, 721 F.3d 533, 539 (8th Cir. 2013)


**C.  The district court's sanctions order did not unconstitutionally infringe on Jordan's freedom of speech or his right to petition the government for a redress of grievances.**

*Bill Johnson's Rest., Inc. v. N.L.R.B.*, 461 U.S. 731, 103 S. Ct. 2161 (1983)

*King v. Fleming*, 899 F.3d 1140, 1151 (10th Cir. 2018)

Appellate Case: 20-2494     Page: 15     Date Filed: 01/19/2021 Entry ID: 4995647

**D.** **The district court ruled properly and did not err in finding that Jordan violated Rule 11 and engaged in conduct authorizing the imposition of sanctions under the district court's inherent authority.**

FED. R. CIV. P. 11

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123 (1991)

*Kelley v. Boettcher*, 82 F. 794, 796, 27 C.C.A. 177 (8th Cir. 1897)


**E.** **The district court's sanctions were authorized, appropriate, and narrowly drawn based on Jordan's specific conduct.**

*Schlafly v. Eagle Forum*, 970 F.3d 924 (8th Cir. 2020)

MO. SUP. CT. R. 4-8.2(a)

*Day v. Day*, 510 U.S. 1, 114 S.Ct. 4 (1993)

4

# VI. Statement of the case

## A. Facts

### 1. The Powers email

The district court case underlying this appeal involves a FOIA claim with origins tracing back to an earlier personal injury action brought under the provisions of the Longshore and Harbor Workers' Compensation Act, *as amended*, 33 U.S.C. §§ 901, *et seq.*, as extended by the Defense Base Act, 42 U.S.C. §§ 1651, *et seq.*  In that case, Jordan's wife and client – Maria Jordan – brought an action against her employer, DynCorp International, Inc. ("DynCorp").  App. 44. By statute, such cases are tried to administrative law judges within the DOL with direct appeals therefrom to the DOL's Benefits Review Board.  *See generally Truczinskas v. Director, Office of Workers' Comp. Programs*, 699 F.3d 672, 674 (1st Cir. 2012).  Maria Jordan's case was assigned to and heard by ALJ Larry S. Merck. App. 45.

During the course of hearing Maria Jordan's case, a discovery dispute arose over one specific email sent on July 30, 2013, by DynCorp employee Darin Powers ("the Powers email") to several recipients.  App. 45.  After DynCorp resisted producing the Powers email based on a claim of attorney-client privilege, ALJ Merck reviewed the Powers email *in camera* and ruled on February 9, 2016:

Appellate Case: 20-2494     Page: 17     Date Filed: 01/19/2021 Entry ID: 4995647

> [DynCorp's] management-level employees expressly
> sought legal advice from [its] in-house counsel, and the
> statements themselves were confidential between the
> employees and the attorney at the time they were made.
> [The Powers email was] received by the in-house counsel
> and a select group of upper-level employees, and there
> has been no evidence submitted to this Court that these
> communications were not kept confidential.

App. 45.  Notwithstanding ALJ Merck's order, Maria Jordan – through legal

filings made by Jordan – continued seeking the Powers email; however, the

decision was repeatedly upheld.  App. 45.  These initial efforts to obtain the

Powers email on behalf of Maria Jordan culminated in the United States Supreme

Court's denial of a writ of certiorari filed by Jordan in 2018.  *Jordan v. Director,*

*Office of Workers' Comp. Programs, Department of Labor*, 138 S. Ct. 1609

(Mem.) (2018).

## 2.  Jordan's federal court FOIA litigation

### a.  Jordan's DC Lawsuit

After ALJ Merck's *in camera* review of the Powers email, Jordan began

filing requests with the DOL seeking disclosure of the Powers email pursuant to

the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  App. 45.  In response

to Jordan's FOIA requests, the DOL consistently asserted that the Powers email

was protected by the attorney-client privilege, repeatedly releasing only a redacted

copy of the Power email to Jordan.

6

Subsequently, Jordan – acting *pro se* – filed an action in the United States District Court for the District of Columbia challenging the DOL's withholding of the unredacted Powers email. *Jordan v. U.S. Department of Labor*, 273 F. Supp. 3d 214 (D.D.C. 2017) ("the DC Lawsuit"). In the DC Lawsuit, the district court[5] noted the DOL had repeatedly denied Jordan's FOIA requests "insofar as it related to unredacted copies of the [the Powers email], claiming that attorney-client privilege applied." *Id*. at 220. The district court itself reviewed the Powers email *in camera* and determined it was "privileged and thus exempt from disclosure." *Id*.

Jordan thereafter appealed the decision to the United States Court of Appeals for the District of Columbia, which rejected Jordan's appeal, concluding:

> The district court did not err in concluding that the Powers email is exempt from disclosure. . . . Notwithstanding [Jordan's] speculation to the contrary, there is no reason to doubt the district court's finding that an *in camera* review revealed the Powers email contains an explicit request for legal advice. Nor is there any evidence of judicial bias, despite [Jordan's] accusations to the contrary. To the extent [Jordan] seeks disclosure of the parts of the Powers email that read "attorney-client privilege" and seek an explicit request for legal advice, the district court did not err in declining to require disclosure of such disjointed words that have "minimal or no information content."

*Jordan v. U.S. Dep't of Labor*, 2018 WL 5819393, op. at *1 (D.C. Cir. Oct. 19, 2018).

---

[5]     The Honorable Rudolph Contreras, District Judge, United States District Court for the District of Columbia.

7

On July 1, 2019, the D.C. district court denied Jordan's Rule 60 motion to have the prior judgment set aside, pointedly concluding:

> This case is over. Plaintiff may not file any further motions without first obtaining leave of court. Leave will not be granted based on the same recycled arguments that Plaintiff has repeatedly raised and this Court has repeatedly found to be meritless. Moreover, raising such arguments again may be cause for an award of fees.

*Jordan v. U.S. Dep't of Labor*, 331 F.R.D. 444, 454 (D.D.C. 2019), *aff'd sub nom. Jordan v. United States Dep't of Labor*, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020), *cert. denied sub nom. Jordan v. Dep't of Labor*, 2020 WL 6121685 (U.S. Oct. 19, 2020). Among the arguments rejected by the DC district court was Jordan's "core . . . belief that the government – and this court – knew that [the Powers email was not] privileged and engaged in a concerted fraudulent effort to conceal the truth." *Id*. at 451. The court specifically found that Jordan did "not in any way substantiate" such a claim. *Id*.

### b. Jordan's WDMO Lawsuit

While Jordan's DC Lawsuit was pending, Jordan – again acting *pro se* – filed an action in the United States District Court for the Western District of Missouri challenging the DOL's failure to produce an unredacted copy of the Powers email in response to a new FOIA request submitted by Jordan. App. 50. The case was assigned to the Honorable Ortie D. Smith, Senior District Judge.

8

Eventually, the district court dismissed Jordan's claims seeking disclosure of the unredacted Powers email, reasoning that a Missouri federal district court should abstain from considering Jordan's FOIA claim due to a first-filed, concurrent federal proceeding involving the same claim, *i.e.*, the DC Lawsuit.

> The D.C. District Court issued a decision related to [the redacted Powers email that Jordan] seeks to appeal in this matter [by challenging the DOL's response to Request 557]. Thus, the conservation of judicial resources, comprehensive disposition of litigation, and the progress of that action weigh in favor of this Court deferring to the D.C. District Court. [Jordan] does not contend, much less set forth evidence, his rights were or are not adequately protected in the D.C. District Court lawsuit. As best the Court can discern, [Jordan] filed numerous motions in the D.C. District Court, and there is no indication [Jordan] rights were not adequately protected.

*Jordan v. U.S. Dep't of Labor*, 2018 WL 6591807, op. at *4 (W.D. Mo. Dec. 14, 2018). Subsequently, the district court rejected Jordan's numerous motions to reconsider the ruling, including rejecting Jordan's arguments that the district court had "made improper inferences and contentions, 'deceptively' chose its words, made misstatements and misrepresentations, 'attempted to create doubt about the meaning' of [Jordan's] FOIA request, and 'asserted another defense for the DOL based on clear falsehoods.'" *Jordan v. U.S. Dep't of Labor*, 2019 WL 2665052, op. at *3 (W.D. Mo. June 27, 2019).

Jordan eventually appealed the district court's decision to this Court. On February 21, 2020, the Court affirmed the dismissal:

> After a careful review, we conclude that the district court
> did not err in dismissing some claims as duplicative of
> another pending litigation.

*Jordan v. U.S. Dep't of Labor*, 794 Fed. Appx. 557 (8th Cir. 2020) (*per curiam*),

*cert. denied sub nom. Jordan v. Dep't of Labor*, No. 20-420, 2020 WL 6385849

(U.S. Nov. 2, 2020).

## B.  Procedural history and relevant rulings

### 1.  The filing of and initial pleadings in Talley's FOIA lawsuit.

After the summary judgment motions had been filed by the parties in the

Jordan WDMO Lawsuit, but before the district court had issued its ruling, Jordan

filed a motion seeking to join a new plaintiff, specifically seeking to add Talley.

App. 51.  Jordan represented to the district court that Talley had "requested the

same records as [Jordan] previously requested [i.e., the Powers email]."  App. 51.

Indeed, according to the motion, Jordan was representing several individuals with

respect to FOIA requests seeking the Powers email submitted to the DOL in

January 2019.  To that end, Jordan admitted:

> [Jordan] is pursuing [the Powers' email] in FOIA suits in
> the D.C. Circuit, as well as in a second case in D.C.
> District Court and in a third case in the Western District
> of Missouri.  In addition, in January 2019, six additional
> individuals . . . each filed his or her own FOIA request
> for Powers' emails.  Each request that is denied will be
> pursued in a separate suit.

App. 49.  However, in its dismissal order of the Jordan WDMO Lawsuit in April of 2019, the district court denied Jordan's motion for leave to add Talley as another plaintiff.  App. 51-52.

On June 26, 2019, Talley filed[6] a COMPLAINT in United States Western District of Missouri,[7] against the DOL seeking disclosure of an unredacted copy of the Powers email pursuant to a FOIA request that she had made to the DOL (while represented by Jordan) on January 7, 2019.  App. 1-13 [Doc. 1].  The next day, the DOL moved to stay Talley's case, arguing:

> Inasmuch as the FOIA request in this case seeks the same records as the FOIA requests at issue in Mr. Jordan's earlier-filed FOIA case, [i]t is substantially likely that any decision by the Eighth Circuit [in Jordan's case] will resolve the outstanding substantive issue in this case (i.e., did the DOL act properly under FOIA in not providing unredacted copy the Powers email).

App. 1-13 [Doc. 4].  After full briefing from the parties, the district court granted the stay motion on July 25, 2019.  App. 1-13 [Docs 5, 6, 7].

---

[6]        Talley lawsuit was initially filed by Missouri attorneys Joshua Sanders and Mark Parrish.  On October 17, 2019, Jordan – who is licensed in Kansas and New York – filed an entry of appearance indicating that he had been admitted to practice in the Western District of Missouri.  App. 1-13 [Doc. 8]. Subsequently Messrs. Sanders and Parrish withdrew from representation of Talley. App. 1-13 [Docs. 9, 11].

[7]        Pursuant to the district court's Local Rules, Talley's FOIA case, after originally being assigned to the Honorable Fernando J. Gaitan, Jr., Senior District Judge, was transferred *sua sponte* to Judge Smith as a "related case" to the earlier-filed Jordan WDMO Lawsuit.  App. 1-13 [Doc 3].; W.D. MO. LOC. R. 83.9.

11

On October 23, 2019 (six days after Jordan entered his appearance on behalf of Talley), Talley filed a 25-page motion seeking reconsideration of the district court's stay order. App. 1-13 [Doc. 10]. The next day, on October 24, 2019, the district court denied Talley's motion without prejudice, noting that her motion exceeded the fifteen-page limit set out in W.D. Mo. Loc. R. 7.0(d)(1)(A).[8] App. 1-13 [Doc. 12]. Thereafter, on October 25, 2019, Talley filed a second motion to reconsider. App. 1-13 [Doc. 13]. However, on October 28, 2019, the district court again denied the motion without prejudice, noting "the motion still exceeds the [permissible] page limitation." App.1-13 [Doc. 14].

Later that same day, Talley filed a third motion to reconsider. App. 1-13 [Doc. 15]. On November 18, 2019, the district court substantively denied the third motion to reconsider, concluding:

> [Jordan's] motion to reconsider does not seek to correct manifest errors of law or fact and does not present newly discovered evidence. In addition, the motion does not demonstrate "exceptional circumstances" requiring the Court to grant the "extraordinary relief" she seeks. Moreover, as stated in its prior decision, staying this matter will conserve the parties' and the judiciary's time and resources in that the same issues and arguments will not have to be relitigated while awaiting a decision from the Eighth Circuit.

App. 1-13 [Doc. 16].

---

[8] "Unless the Court orders otherwise . . . [s]upporting suggestions [for a motion] may not exceed 15 pages." Jordan did not seek leave of the district court to exceed the page limitation.

Appellate Case: 20-2494    Page: 24    Date Filed: 01/19/2021 Entry ID: 4995647

**2.     Jordan's November 19, 2019 filing of the MOTION TO REMEDY JUDGE SMITH'S LIES AND CRIMES AND LIFT THE STAY OR DISQUALIFY JUDGE SMITH and resulting show cause order with referral to another district judge.**

The day after the district court declined to reconsider its stay motion, Talley – represented by Jordan – filed her MOTION TO REMEDY JUDGE SMITH'S LIES AND CRIMES AND LIFT THE STAY OR DISQUALIFY JUDGE SMITH.  Supp. App. 1-20.  As discussed in more detail *infra*, the pleading asked the district court to:

> very promptly remedy each knowing and willful falsehood ("Lie") and violation of the Constitution or federal law and crime by Judge Smith below or promptly disqualify Judge Smith.

Supp. App. 6.  On December 3, 2019, the DOL responded to Talley's motion stating, in part, that the motion was "both abusive and baseless."  App. 1-13 [Doc. 18].  On January 8, 2020, the district court entered an order again refusing to reconsider its previous stay ruling and further declining to recuse, in part, noting:

> Talley lodges unsubstantiated and meritless accusations against the undersigned. However, such conclusory and unfounded allegations are insufficient to support disqualification.

App. 18.

That same day, the district court also issued a second order entitled ORDER DIRECTING PLAINTIFF AND PLAINTIFF'S COUNSEL TO SHOW CAUSE, directing Jordan and Talley to show why they should not be held in contempt, stating:

13

> Talley's request to reconsider the stay and disqualify the undersigned was denied earlier today. However, statements made in Talley's motion, which Jordan signed and filed, must be addressed. . . . Throughout the motion, Talley and her counsel unequivocally state the undersigned engaged and continues to engage in criminal, illegal, and improper conduct . . . . These statements appear to violate Rule 11(b) of the Federal Rules of Civil Procedure in that the statements are not supported by evidence. And the groundless and unsubstantiated accusations against the undersigned suggest Jordan has violated the Court's Local Rules and its Code of Professional Responsibility. The Court finds a show cause proceeding is necessary. Plaintiff and her counsel must show cause why either or both should not be held in contempt.

App. 23-25. The district court directed the Clerk of the Court to "to randomly assign this matter to another Article III judge for the limited purposes of conducting a show cause proceeding and issuing any order resulting therefrom." App. 25. On January 8, 2020, the show cause proceeding was reassigned to the Honorable Beth Phillips, Chief District Judge. App. 1-13 [Doc. 24].

### 3. The district court proceedings on the show cause order and the district court's first sanctions order entered on March 4, 2020.

On January 13, 2020, Judge Phillips entered an order regarding the limited referral. App. 26-30. Therein, Judge Phillips, after examining the MOTION TO REMEDY JUDGE SMITH'S LIES AND CRIMES AND LIFT THE STAY OR DISQUALIFY JUDGE SMITH (designated as the "Filing" by Judge Phillips), initially observed:

14

The overall tenor of the Filing contends that Judge Smith has colluded with Defendant's counsel[9] and issued the Stay Order despite knowing that it both violated the law and constituted an abuse of discretion, and that Judge Smith has himself violated the law.

App. 27. Judge Phillips noted that "authority to issue sanctions" derived from FED. R. CIV. P. 11 and "Missouri's Rules of Professional Responsibility, which the Court has adopted as its Code of Professional Responsibility."[10] With regard to Rule 11, Judge Philips noted:

> [T]he Filing accuses Judge Smith of engaging in intentional wrongdoing: knowingly issuing unlawful orders, conspiring with Defendant's counsel, lying, and committing crimes. The Filing does not support these accusations with any facts beyond Jordan's and Talley's disagreement with the Stay Order. Disagreement is one thing, but accusations of intentional wrongdoing are another and the Filing presents no basis for believing that there is evidentiary support for the Filing's assertions as required by Rule 11(b)(3). Moreover, it appears the Filing is intended to harass.

---

[9] The "criminal conspiracy" allegations raised by Jordan before the district court also included scurrilous allegations directed toward other federal officers, including the undersigned Deputy United States Attorney. Inasmuch as the district court's sanctions orders focused solely on Jordan's allegations about Judge Smith, this BRIEF OF APPELLEE is similarly limited in scope. However, the limited nature of this BRIEF OF APPELLEE should not be construed as acquiescence in or acceptance of any of Jordan's baseless and outlandish claims regardless of the target of such claims.

[10] W.D. Mo. Loc. R. 83.6(c)(1) ("The District's Code of Professional Responsibility is the Rules of Professional Conduct adopted by the Supreme Court of Missouri, except as otherwise provided by specific order of the Court *en banc* after consideration of comments by representatives of bar associations within the State.").

15

App. 28-29.  With regard to the Missouri Rules of Professional Responsibility, Judge Phillips noted that "[t]he Filing's allegations may implicate several ethical rules," specifically identifying MO. SUP. CT. R. 4-8.2(a), 4-3.3(a)(1), 4-8.4(c), and 4-8.4(d).

After analyzing the precise contents of the Filing, Judge Phillips specifically identified 24 discrete statements from the Filing that she believed raised potential concerns under Rule 11 and the Missouri Rules of Professional Responsibility, appending a list of the 24 statements as "Attachment A" to her show cause order. App. 31-34.  Judge Phillips then concluded her order by directing Jordan "to respond to [the] Order and show cause why [he] should not be held in contempt or otherwise sanctioned for the [identified] statements."  App. 30.[11]

On February 18, 2020,[12] Jordan filed his 30-page response, also including a 34-page supplement entitled "Analysis of Evidence of Crimes and Lies by Judge Smith and Jeffrey Ray," a 20-page supplement entitled "Analysis of FOIA and Related Legal Authorities that Judge Smith is Evading by Staying Cases Pertaining to Powers' Email," and an 11-page affidavit from Jordan.  Supp. App. 21-115.

---

[11]     Judge Smith's referral and Judge Phillips' subsequent show cause order both initially were also directed to Talley.  Ultimately, however, sanctions were only ever imposed on Jordan.

[12]     Prior to filing any response, Jordan on five occasions unsuccessfully asked Judge Phillips to reconsider and vacate the show cause order on February 2, 8, 9, 10, 11, 2020.  App. 1-13 [Docs. 32, 36, 37, 39, 41].

16

On March 4, 2020, Judge Phillips entered her order. Supp. App. 116-29.

After analyzing Jordan's response, Judge Phillips identified four non-substantive/ procedural arguments raised by Jordan, to wit:

(1)     the process employed was unfair because Jordan was not afforded an opportunity to respond until after Judge Smith made a referral,

(2)     the process employed was "patently illegal" because it did not adhere to W.D. Mo. Loc. R. 83.6(d),

(3)     the attorneys for the DOL should be sanctioned, and

(4)     the process employed was unfair because Jordan was not provided with the Powers email before responding to the order.

Supp. App. 124-26. Judge Phillips rejected Jordan's these arguments, finding:

(1)     since the show cause order "provide[d] [Jordan] with an opportunity to respond; there was no need to provide Jordan with an opportunity to be heard before the OSC was issued,"

(2)     W.D. Mo. Loc. R. 83.6(d) provides the procedure only for suspending or disbarring an attorney from practicing in the District; it does not impact or regulate the procedure for other attorney discipline,

(3)     the "misconduct" that Jordan attributed to Government attorneys was merely "opposing Jordan's and Jordan's clients' requests for relief and seeking favorable judicial rulings," and

(4)     the ethical rules at issue "require an attorney to conduct a reasonable investigation and have a basis for making certain statements before making them" and Jordan could not establish that he had a reasonable basis for his accusations by looking at the [Powers] email after the fact."

Supp. App. 124-26.

17

As for any argument on the merits, with regard to Jordan's response to the

24 specific statements identified by the district court, Judge Philips concluded that:

> [Jordan's] reasoning really distills to the following – Judge
> Smith did not rule in the manner Jordan advocated; nothing
> more. And adverse rulings, regardless of how sincerely the
> attorney believes them to be incorrect, do not demonstrate
> illegal, criminal, or even improper conduct by the judge.
> [C]haracterizing an adverse ruling as "illegal" or "criminal," or
> the product of "lies" or a "conspiracy," requires something more
> than the adverse ruling. And here, Jordan has nothing more. He
> presents nothing to demonstrate, as required by Rule 11, that he
> had evidentiary support or the likelihood of evidentiary support
> for his accusations; this observation, alone, justifies the
> imposition of sanctions. Jordan's response also does not
> adequately explain how his conduct is consistent with . . . Rule
> 4-8.2(a). Jordan has made baseless accusations that Judge Smith
> intentionally and knowingly issued legally incorrect rulings,
> engaged in criminal misconduct, lied, and conspired with one of
> the parties in a case to the detriment of the other. Thus, Jordan
> has made statements about Judge Smith's qualifications and
> integrity that he knew were false or, at least, he acted with
> reckless disregard to their truth or falsity when he signed and
> submitted the Filing. This violates Rule 4-8.2(a).

Supp. App. 126-27.

Finding that Jordan's original "Filing contain[ed] multiple statements and

accusations that had no reasonable basis in fact," Judge Phillips – "pursuant to

Rule 11(c)(4) and the Court's inherent authority to punish contemptible conduct" –

imposed a sanction of $1,000 to be paid by Jordan to the Clerk of Court. Supp.

App. 129. Judge Phillips' order concluded:

18

> Jordan is a not a member of the Missouri Bar
> Association. He is a member of this Court's Bar by virtue
> of his membership in the Bar of the United States District
> Court for the District of Kansas. Jordan is a member of
> that Bar by virtue of his membership in the Kansas Bar
> Association. And, Kansas has ethical rules that are
> similar (if not identical) to the Missouri Rules of
> Professional Responsibility cited earlier. *See*, *e.g.*,
> Kansas Rules 3.3, 8.2, 8.4. Accordingly, the Court will
> refer this matter to the Kansas Bar Association so that it
> can determine what action, if any, should be taken.

Supp. App. 129.

## 4. The district court's second sanctions order entered on July 1, 2020

Undeterred and unchastened, the day after Judge Phillips entered her order, Jordan filed a new "responsive" pleading wherein he charged that Judge Phillips "asserted obvious falsehoods and lies and knowingly violated federal law and the Constitution." App. 1-13 [Doc. 48]. Subsequently, on March 16 and 17, 2020, Jordan filed separate motions to vacate the sanctions order, to wit: (1) PLAINTIFF'S MOTION TO VACATE JUDGE PHILLIPS'S CRIMINAL ABUSE OF CRIMINAL CONTEMPT and (2) PLAINTIFF'S MOTION TO VACATE JUDGE PHILLIPS'S CRIMINAL USURPATIONS OF POWER. App. 1-13 [Docs. 52, 53]. On April 1, 2020, Jordan filed a notice with the district court stating that he would not comply with the payment of $1,000 sanction because Judge Phillips' orders "were illegal and criminal." App. 1-13 [Doc. 55].

19

In the meantime, on May 5, 2020, the district court[13] issued an order lifting the stay[14] of the litigation and directing the parties to file dispositive motions. App. 1-13 [Doc. 62]. On that same day, Jordan filed another motion to vacate the district court's sanctions order and to disqualify Judge Smith, flatly contending:

> [Judge Smith was utilizing] "knowing and willful
> falsehoods (each a 'Lie') and crimes to help employees
> of the [DOL and DOJ] illegally and criminally conceal
> relevant evidence and material facts. . . . Judge Smith
> used Judge Phillips (and Judge Phillips and Judge Smith
> conspired) to violate Jordan's due process rights.

App. 1-13 [Doc. 61]. On June 13, 2020, Jordan again sought to have the district court's sanctions order vacated, filing the PLAINTIFF'S MOTION TO RECONSIDER AND VACATE JUDGE PHILLIPS'S CRIMINAL ABUSE OF SANCTIONS AND CEASE USING ORDERS FOR CRIMINAL INTIMIDATION. App. 1-13 [Doc. 79].

On June 30, 2020, the district court entered an order rejecting the various motions to reconsider that had been filed by Jordan, observing:

> [Jordan] has filed numerous motions in this matter,
> including but not limited to ten motions to reconsider.
> These motions, including the most recently filed motions,
> are largely frivolous, unprofessional, and scurrilous, if not
> defamatory, in tone and content. The Court refers [Jordan]
> to Judge Phillips's [order] wherein Judge Phillips
> determined [Jordan] counsel violated Rule 11, sanctioned
> him, and referred him to the Kansas Bar Association.

---

[13]   At that time, the case had been returned to Judge Smith.

[14]   This Court issued its decision in the appeal of the Jordan WDMO Lawsuit on February 21, 2020, with the mandate being returned on May 5, 2020.

20

App. 35-36.  The district court noted that dispositive motions had been filed by the parties in the case, yet Jordan continued to file other motions.  App. 35.  The district court warned Jordan that:

> [A]dditional frivolous motion practice will be met with additional sanctions, another referral to the Kansas Bar Association, and referrals to other jurisdictions wherein counsel is licensed to practice law.

App. 36.[15]

Within a day of the district court's order, Jordan filed two pleadings again attacking Judge Smith.  App. 1-13 [Docs. 90, 91].  In response, on July 1, 2020, the district court entered an order stating:

> Plaintiff's Motion for Order Stating the Law and Showing Judge Smith Did Not Lie About the Law (Doc. #90) and Plaintiff's Motion for Order Stating the Law Showing Judge Smith's Threat Was Not Criminal (Doc. #91) are struck from the record due to non-compliance with the Court's June 30, 2020 Order.  [The DOL] need not reply to either motion. [Talley and Jordan] are prohibited from filing anything further in this matter without the Court's prior approval.

App. 37.

---

[15]    The district court also noted that Jordan had been similarly warned in FOIA litigation he was pursuing in other jurisdictions seeking the Powers email, citing *Jordan v. U.S. Dep't of Justice*, No. CV 17-2702 (RC) (D.D.C.), MINUTE ORDER OF APRIL 1, 2020 [Text Only Entry] ("any additional pleadings by [Jordan] concerning the Powers [e-mail] may be met with sanctions and/or a referral to the State bar of which Mr. Jordan is a member") and *Immerso v. U.S. Dep't of Labor*, No. 19CV3777NGGVMS (E.D.N.Y.), ORDER OF MARCH 13, 2020 [Text Only Entry] ("The court warns [Jordan] that further frivolous motion practice . . . will be met with sanctions.").

Appellate Case: 20-2494     Page: 33     Date Filed: 01/19/2021 Entry ID: 4995647

### 5. The district court's third sanctions order entered on July 9, 2020

Following the July 1, 2020 order, Jordan sent an email to the district court on July 8, 2020. According to the district court, Jordan's email stated that Judge Smith's "efforts (alone or in conjunction with the Clerk or federal agency employees) to deny [Jordan] any right protected by federal law or the Constitution is criminal." Supp. App. 131. The email further alleged Judge Smith had continued to be "engaged in 'criminal misconduct.'" Supp. App. 131. As a consequence, on July 9, 2020, the district court ordered:

> Pursuant to its prior Orders and due to [Jordan's] defiance of said Orders, the Court directs the Clerk's Office to mail a copy of this Order, along with copies of the docket sheet and Documents #83, 86, 89, 90, 91, 92, 93, 94, and 95, to the following:
>
> Kansas Bar Association
> Attn: Office of the Disciplinary Administrator
> 301 SW 10th Avenue
> Topeka, KS 66612-1507
>
> Additional violations of the Court's Orders will result in sanctions, up to and including the dismissal of this matter.

Supp. App. 131.

22

### 6. The district court's fourth sanctions order entered on July 20, 2020

On July 13, 2020, the district court ruled on the parties' pending dispositive motions, granting the DOL's motion for summary judgment and denying Jordan's motion for a judgment on the pleadings. App. 42. On that same day, the Court entered another order stating:

> On July 13, 2020, [Jordan] sent yet another email to Chambers staff. The email attaches a letter and two exhibits. The subject of the letter is "Third Request for Conference re: Key Phrases in Powers' email." [Jordan] seeks the same relief that has been denied twice by the Court. Additionally, [Jordan] is attempting to circumvent the Court's filing prohibition by emailing a substantive filing – albeit in letter form – to Chambers staff. The Clerk's Office is directed to file [Jordan's] email and attach the letter and exhibits to the filing. The Clerk's Office shall strike this filing but retain a copy under seal.

Supp. App. 132. On July 15, 2020, the district court entered another order after Jordan again sent an email directly to the district court:

> [O]n July 14, 2020, [Jordan] sent an email to Chambers staff, which he was prohibited from doing and sent an email to the Clerk's Office. . . . Again, [Talley] and her counsel are prohibited from filing anything further in this matter or sending emails to Chambers staff. In addition, [Talley] and her counsel shall not send emails to Clerk's Office employees. Now that this matter has been appealed, any inquiries shall be directed to the Eighth Circuit Court of Appeals.

App. 1-13 [Doc. 108 (Text Entry Only)].

23

Notwithstanding the district court's order of July 15, 2020, the next day,

Jordan sent two emails to the district court. Supp. App. 137. According to the

court:

> These emails violate the Court's Orders. First and foremost,
> [Talley and Jordan] were prohibited from sending emails to
> Chambers staff. Second, [Jordan's] emails and the letter attached
> to the first email recite the same statements that led to [Jordan]
> being held in contempt and sanctioned. Third, the emails and the
> letter are efforts to avoid the Court's prohibition against [Talley
> and Jordan] filing anything further in this matter. Fourth, the
> emails and letter generally reiterate arguments already raised by
> [Talley and Jordan], even though the Court warned [them] that it
> would not entertain filings that rehashed arguments. These
> emails – and [Jordan's] emails to Chambers staff since the Court
> prohibited them from filing anything without Court approval –
> are abusive. But this is not a new development. For several
> months, [Talley and Jordan] have engaged in a pattern of
> disrespectful, improper, and abusive conduct and have
> disregarded and violated the Court's Orders.

Supp. App. 138. After recounting Jordan's long history of filing "repetitive

motions and briefs," the district court concluded:

> This Court has been tolerant of [Jordan's] abusive antics. . . .
> For his repeated violations of Court's Orders, including but not
> limited to the Court's Orders prohibiting [Jordan] from emailing
> Chambers staff and Clerk's Office staff, the Court sanctions
> [Jordan] in the amount of $500.00. This sum shall be paid to the
> Clerk of the Court within thirty days of this Order. For each
> future violation of the Court's Orders, the Court will sanction
> [Jordan] an additional $500.00 per violation. . . . . The Court
> directs the Clerk's Office to transmit this Order to the Office of
> the Kansas Disciplinary Administrator and the New York
> Attorney Grievance Committee.

Supp. App. 139-40.

# IX. Summary of the argument

In the course of FOIA litigation involving a document long sought-after by Jordan, he became convinced (as he had in other cases involving the same document) that the district court's refusal to enter orders favorable to his legal arguments could only be the result of a massive criminal conspiracy involving the district court, the United States Attorney's office, and the DOL. Beginning in January of 2020 and continuing throughout the remaining course of the litigation, Jordan filed numerous pleadings charging the district court with criminal activity and conspiracy.

Pursuant to Rule 11 and the district court's inherent authority, it issued a show cause order to Jordan as to why he should not be sanctioned for such pleadings. Jordan's response did not provide an evidentiary basis for his scandalous allegations. Moreover, Jordan's subsequent determination to continue asserting such allegations in the face of the district court's admonitions demonstrated an utter contempt for the district court's authority.

The district court acted appropriately and within its discretion in sanctioning Jordan by imposing a $1,000 and $500 penalty on Jordan, by placing filing restrictions on Jordan, and by referring the sanctions' orders to the two states that licensed Jordan to practice law.

Appellate Case: 20-2494    Page: 37    Date Filed: 01/19/2021 Entry ID: 4995647

## X. Argument

## A. Standard of appellate review

It is now well-settled law that "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's [] determination" to impose sanctions pursuant to FED. R. CIV. P. 11. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461 (1990). *See also Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018). This deferential standard extends to a district court's selection of an appropriate sanction under Rule 11. *Cooter & Gell*, 496 U.S. at 400, 110 S.Ct. at 2458. Similarly, appellate courts "review a [district] court's imposition of sanctions under its inherent power for abuse of discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S.Ct. 2123, 2138 (1991). *See also United States v. Gonzalez-Lopez*, 403 F.3d 558, 564 (8th Cir. 2005). And, again, such discretion encompasses a district court's "ability to fashion an appropriate sanction." *Chambers*, 501 U.S. at 44-45, 111 S.Ct. at 2132-33.

Constitutional challenges alleging that a district court's order imposes unconstitutional burdens and constitutional challenges to a district court's authority and jurisdiction to impose sanctions are all reviewed *de novo* on appeal. *In re Reed*, 888 F.3d 930, 934 (8th Cir. 2018). Such *de novo* review is also applied to assertions that a sanction award was imposed without adequate procedural due process. *Id*. at 938.

Appellate Case: 20-2494     Page: 38     Date Filed: 01/19/2021 Entry ID: 4995647

**B.    The district court had jurisdiction and authority to impose monetary sanctions and filing restrictions on Jordan.**

At issue in this appeal is the propriety of the district court taking steps to sanction Jordan for his conduct as an attorney.  In his APPELLANT'S OPENING BRIEF, at 25, Jordan argues that the district court[16] "lacked any power or jurisdiction to address the potential misconduct or contempt" charged to Jordan. Even before addressing the various narrow objections raised by Jordan, it must be noted that federal district court's enjoy broad authority to control the conduct of attorneys appearing in district court, including the jurisdiction to impose sanctions.

The authority of federal courts to regulate attorneys appearing before the federal courts derives from multiple sources.  See, *e.g.*, Judith A. McMorrow, *et al.*, *Judicial Attitudes Toward Confronting Attorney Misconduct: A View from the Reported Decisions,* 32 Hofstra L. Rev. 1425, 1427 (Summer 2004) ("Judges have a panoply of procedural and substantive rules to address attorney conduct issues that arise in litigation."); Fred C. Zacharias & Bruce A. Green, *Federal Court Authority to Regulate Lawyers: A Practice in Search of a Theory*, 56 VAND. L.

---

[16]    The sanctions orders at issue were entered by Judge Phillips (on March 4, 2020) and Judge Smith (on July 1, 2020, July 9, 2020, and July 20, 2020).  Unless a discussion of the actions of a specific judge is relevant to the discussion of a particular legal issue, this BRIEF FOR APPELLEE will refer broadly to the "district court" rather than the individual judge.

27

REV. 1303, 1305-06 (2003).  As courts of limited jurisdiction created by Congressional action, some district court authority to regulate attorneys derives directly from federal law.  *See. e.g.*,  18 U.S.C. § 3006A (codified in statutory notes) [Hyde Amendment] (authorizing federal courts to assess financial sanctions on federal prosecutors); 28 U.S.C. § 530B [McDade Amendment] (authorizing federal courts to apply state ethics rules to prosecutors in federal court); 28 U.S.C. § 1927 (authorizing the imposition of financial sanctions on any counsel who "multiplies the proceedings in any case unreasonably and vexatiously").  Most pertinent to this case, the most prominent Congressional authorizations are set forth in the Federal Rules of Civil Procedure, including FED. R. CIV. P. 11 (authorizing sanctions on lawyers who file pleadings for improper purposes) and FED. R. CIV. P. 37 (authorizing sanctions on lawyers who abuse discovery process).

Moreover, federal courts have been empowered to adopt and enforce their own disciplinary rules pursuant to rule-making authority delegated by Congress. *See, e.g.,* 28 U.S.C. § 1654 (subjecting appearances by counsel to "rules of [federal] courts"); 28 U.S.C. § 2071(a) (authorizing federal courts to "prescribe rules for the conduct of their business"); FED. R. CIV. P. 83(a) (authorizing federal district courts to adopt rules governing practice).  Pursuant to this authority, the United States District Court for the Western District of Missouri has adopted Local Rules.  W.D. MO. LOC. R. 1.1, *et seq.*

28

Moreover, it is widely accepted that federal courts are possessed with inherent authority to regulate attorney conduct, authority that predates most other sources of attorney discipline. *See*, *e.g.*, *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."). This inherent authority derives from a courts' broad "supervisory power," the courts' inherent authority of federal courts to protect their own jurisdiction, the courts' "authority of the federal courts to control the admission of lawyers to practice before them," and a "general ethics authority." *Federal Court Authority*, *supra*, at 1313. As a consequence:

> [Federal d]istrict courts have inherent power . . . to impose sanctions short of dismissal for violations of court orders. Remedial tools like monetary penalties or attorney discipline remain available to punish and deter . . . violations even when dismissal is not appropriate.

*State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 444 (2016).

The adoption over time of specific rules governing the conduct of attorneys and authorizing the district court to regulate attorney conduct did not diminish or displace a district court's inherent authority. *Chambers*, 501 U.S. at 46, 111 S.Ct. at 2134. Ultimately, a district court – in the exercise of its "informed discretion" – is free to choose among the applicable authorities when evaluating and addressing attorney conduct. *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020).

Appellate Case: 20-2494    Page: 41    Date Filed: 01/19/2021 Entry ID: 4995647

In this case, wherein it was alleged that Jordan filed pleadings asserting scurrilous claims that were not supported by evidence, filed pleadings intended to harass, and repeatedly defied district court orders. In light of this conduct, the district court proceeded with sanctions against Jordan under Rule 11 and the district court's inherent power, which necessarily included "the ability to fashion an appropriate sanction for conduct which abuse[d] the judicial process." *Chambers*, 501 U.S. at 44–45, 111 S.Ct. at 2133.

## C. The district court did not violate the United States Constitution in imposing monetary sanctions and filing restrictions on Jordan.

Jordan raises two broad constitutional attacks on the district courts sanctions orders. First, Jordan argues that he was denied due process[17] based on the procedures employed by the district court. APPELLANT'S OPENING BRIEF, at 24-25, 33-43. Second, Jordan argues that the district court's sanctions orders violate Jordan's rights protected by the First Amendment[18] – specifically his freedom of speech and his right to petition the government for a redress of grievances. APPELLANT'S OPENING BRIEF, at 44-53.

---

[17] "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

[18] "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble and to petition the Government for a redress of grievances." U.S. CONST. amend. I.

30

### 1. Jordan was provided adequate notice and an opportunity-to-be-heard so as to comport with procedural due process.

For the imposition of sanctions on an attorney to be proper, the sanctioning court "must comply with the mandates of due process." *Chambers*, 501 U.S. at 50, 111 S.Ct. at 2136. Before this Court, Jordan complains that he was deprived of due process. APPELLANT'S OPENING BRIEF, at 34-38, 40-41. But as set out herein, Jordan was provided all the process he was due and the extra protections to which he claims entitlement are required for criminal proceedings and are not required for sanctions imposed under Rule 11 or a district court's inherent authority.

Rule 11 sets forth the basic procedural requirement that must be followed before a court may *sua sponte*[19] impose sanctions against an attorney:

(1)    the proposed sanctioned attorney must be afforded "notice and a reasonable opportunity to respond,"

(2)    "the court [must] determine that Rule 11(b) has been violated."

FED. R. CIV. P. 11(c)(1). Thus, under Rule 11, "[d]ue process is satisfied if the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).

---

[19]    The sanctions in this case were imposed without any motion from the DOL. When a district court imposes sanctions pursuant to a motion from a party, a slightly different procedure is prescribed, including a mandatory 21-day "safe harbor" period. FED. R. CIV. P. 11(c)(2).

31

Similarly, when a district court imposes sanctions pursuant to its inherent authority, due process only requires that the contemnor "received notice of the 'precise ground for the imposition of sanctions' and an opportunity to be heard." *Isaacson v. Manty*, 721 F.3d 533, 539 (8th Cir. 2013).  *See also Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005).

In this case, in a series of actions and orders, the district court imposed sanctions on Jordan based on Rule 11 and the court's inherent authority.

- On <u>January 8, 2020</u>, Judge Smith entered and directing Jordan to show why he should not be held in contempt for the statements made in one of his pleadings that appeared to violate Rule 11 and the Missouri Rules] of Professional Responsibility.

- On <u>January 8, 2020</u>, the show cause proceeding was randomly reassigned to the Honorable Beth Phillips, Chief District Judge.

- On <u>January 13, 2020</u>, Judge Phillips entered an order identifying 24 specific statements from Jordan's pleading and directing Jordan to "show cause why [he] should not be held in contempt or otherwise sanctioned for the statements" under either Rule 11 (statements made without evidentiary support and statement made to harass) or five specific provisions of the Missouri Rules of Professional Responsibility.

- On <u>March 4, 2020</u>, after receiving Jordan's response, Judge Phillips entered an order addressing Jordan's arguments about the procedures and considering Jordan's justifications for the 24 specifically identified statements.  Judge Phillips found that Jordan presented nothing to demonstrate, as required by Rule 11, that he had evidentiary support or the likelihood of evidentiary support for his accusations.  Further, Judge Phillips found that Jordan made statements that he knew were false or, at least, he acted with reckless disregard to their truth or falsity" in violation of Mo. Sup. Ct. R. 4-8.2(a).

32

- On <u>March 4, 2020</u>, Judge Phillips – "pursuant to Rule 11(c)(4) and the Court's inherent authority to punish contemptible conduct" – imposed a sanction of $1,000 to be paid by Jordan to the Clerk of Court and determined to "refer this matter to the Kansas Bar Association."

- On <u>June 30, 2020</u>, after a series of filings by Jordan, Judge Smith found Jordan's recent filings were "largely frivolous, unprofessional, and scurrilous, if not defamatory," referred Jordan to Judge Phillips' earlier order, and specifically warned Jordan that "additional frivolous motion practice will be met with additional sanctions, another referral to the Kansas Bar Association, and referrals to other jurisdictions."

- On <u>July 1, 2020</u>, after Jordan filed more pleadings, Judge Smith entered an order stating that Jordan was prohibited from filing anything further in the case without the Court's prior approval.

- On <u>July 9, 2020</u>, after Jordan sent a series of emails to the district court, Judge Smith – "pursuant to prior Orders and due to [Jordan's] defiance of said Orders" –directed "the Clerk's Office to mail a copy of this Order, along with copies of the docket sheet and" other documents the Kansas Bar Association. Judge Smith further noted that "[a]dditional violations of the Court's Orders will result in sanctions, up to and including the dismissal of this matter."

- On <u>July 15, 2020</u>, after Jordan sent further emails to the district court, Judge Smith reiterated that Jordan was prohibited from filing anything further in the matter or sending emails to Chambers staff or Clerk's Office employees.

- On <u>July 20, 2020</u>, after Jordan sent further emails to the district court and the Clerk's office, Judge Smith sanctioned Jordan in the amount of $500.00 and directed the Clerk's Office to transmit the sanctions order to the Kansas and New York Bars.

In its proceedings involving the imposition of sanctions on Jordan, the district court afforded him Constitutionally adequate due process.

33

Notwithstanding the fact that he was afforded notice and an opportunity to be heard, Jordan raises several arguments in support of his contention that he was owed further due process. Each of Jordan's assertions, however, is mistaken and misplaced.

Initially, Jordan asserts that the sanctions procedures utilized by the district court failed to meet many of the requirements explicitly set out in W.D. MO. LOC. R. 83.6.[20] APPELLANT'S OPENING BRIEF, at 34-36. Jordan raised this same contention before the district court, and it was dispatched by Judge Phillips:

> Local Rule 83.6 generally prescribes the Court's processes for disciplining an attorney's license (such as by suspension or disbarment). It does not affect a judge's power to issue sanctions pursuant to Rule 11 or affect a judge's power to issue sanctions for an isolated violation of ethical rules in the context of a single case. It may be that the undersigned's ultimate decision is to refer this matter for discipline pursuant to Local Rule 83.6(d)(1), and that decision may depend on the response to the Order to Show Cause. Regardless, requiring Jordan to explain/defend the conduct described in the Order to Show Cause is not proscribed by Local Rule 83.6.

Supp. App. 124. Judge Phillips further addressed Jordan's "Rule 83.6" argument in the first sanctions order:

---

[20]    The Local Rules require the institution of a disciplinary investigation conducted by a court-appointed special master, a probable cause standard, a three-judge hearing panel, and a discipline determination by the district court sitting *en banc*. W.D. MO. LOC. R. 83.6(d).

34

The flaw in Jordan's argument is that there is a difference between "discipline" and "sanctions." "Discipline" typically refers to a general action taken with respect to the attorney's right to practice law; a sanction is designed to punish and deter misconduct in the context of a particular case. This distinction is based on the definitions of those terms and is recognized by Missouri's Rules of Professional Responsibility, which describe the "discipline" that can be imposed as consisting of such actions as reprimands, probation, suspension, and disbarment. See, e.g., Missouri Rule 5.16. And there is no doubt: Local Rule 83.6(d) must be followed before one of these actions (particularly probation, suspension, and disbarment) can be taken. However, Local Rule 83.6(d) does not deprive a judge of his or her authority – either inherent authority or the authority bestowed by Rule 11 – to impose sanctions other than probation, suspension, or disbarment when an attorney engages in improper conduct while litigating a case in front of that judge.

Supp. App. 125.

Notwithstanding Judge Phillips' explanation, Jordan – in his briefing – continues to assert that the district court should have followed the procedures set forth in W.D. Mo. Loc. R. 83.6. According to Jordan, the Local Rule needed to be followed because the Local Rule provides:

An attorney admitted to this Bar has committed misconduct if he or she violates the District's adopted Code of Professional Responsibility, whether by act or omission, whether committed individually or in concert with any other person or persons, and whether committed in the course of an attorney client relationship or the practice of law. The District's Code of Professional Responsibility is the Rules of Professional Conduct adopted by the Supreme Court of Missouri.

35

W.D. Mo. Loc. R. 83.6(c)(1).  Inasmuch as the district court charged Jordan with a violation of the Missouri Rules of Professional Conduct, Jordan seemingly assumes that Local Rule 83.6 provided the exclusive path for sanctioning Jordan. He is wholly mistaken.

As Judge Phillips acknowledged, the district court <u>could</u> have elected to proceed against Jordan under Local Rule 83.6 and sought to challenge Jordan's admission to practice law in the Missouri federal courts.  But such an approach was not mandated.  Indeed, Local Rule 83.6 unambiguously states:

> If an attorney admitted to this Bar commits misconduct as specified in this Rule, then the Court *en banc* <u>may</u> discipline that attorney in accordance with this Rule.

W.D. Mo. Loc. R. 83.6(a) (*emphasis added*).  As the Supreme Court has made clear, a district court is free to exercise its discretion in choosing among the many avenues for sanctioning attorneys  *Chambers*, 501 U.S. at 50, 111 S.Ct. at 2135–36 ("a federal court [is not] forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules").  *See also* 5A ARTHUR R. MILLER, MARY KAY KANE AND A. BENJAMIN SPENCER, FEDERAL PRACTICE & PROCEDURE § 1336 (4th ed. 2010) ("Indeed in many contexts, two or more of these sanctioning sources overlap, and the district judge has the authority to pick among them in terms of their relative appropriateness.").

36

In addition, Jordan claims that the actions of the district court – particularly in imposing penalties directly payable to the Clerk of the district court – were criminal in nature and, consequently, required all of the Constitutional protections attendant to a criminal prosecutions, including rights and procedures embedded in the Fifth Amendment, the Sixth Amendment, FED. R. CRIM. P. 16 (governing government production of evidence), and FED. R. CRIM. P. 42 (governing criminal contempt).

Under Rule 11, district courts explicitly possess broad discretion in fashioning an "appropriate sanction." FED. R. CIV. P. 11(c)(1) ("the court may impose an appropriate sanction "). The same principle applies to sanctions imposed based on a district court's inherent authority. *Chambers*, 501 U.S. at 44–45, 111 S.Ct. at 2123 ("A primary aspect of [a district court's inherent authority] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). *See also Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993). Most importantly for purposes of this appeal, the law is clear that "appropriate sanctions" may include monetary penalties payable directly to the court and the inclusion of such penalties does not transform a sanction decision into a criminal proceeding.

In enacting Rule 11, Congress expressly provided the federal courts with guidance as to the nature and purpose of sanctions:

Appellate Case: 20-2494    Page: 49    Date Filed: 01/19/2021 Entry ID: 4995647

> A sanction imposed under this rule must be limited to
> what suffices to deter repetition of the conduct or
> comparable conduct by others similarly situated. The
> sanction may include nonmonetary directives; <u>an order to
> pay a penalty into court</u>; or, if imposed on motion and
> warranted for effective deterrence, an order directing
> payment to the movant of part or all of the reasonable
> attorney's fees and other expenses directly resulting from
> the violation.

FED. R. CIV. P. 11(c)(4) (*emphasis added*).  See also Fed. R. Civ. P. 11 [Advisory

Committee Notes to the 1993 Amendment] ("Since the purpose of Rule 11

sanctions is to deter rather than to compensate, the rule provides that, if a monetary

sanction is imposed, it should ordinarily be paid into court as a penalty.").

Moreover, the Rule contemplates the appropriate level of due process that must be

provided when a such a penalty is imposed:

> The power of the court to act on its own initiative is
> retained [following the 1993 amendments to Rule 11],
> but with the condition that this be done through a show
> cause order. This procedure provides the person with
> notice and an opportunity to respond. The revision
> provides that a monetary sanction imposed after a court-
> initiated show cause order be limited to a penalty payable
> to the court and that it be imposed only if the show cause
> order is issued before any voluntary dismissal or an
> agreement of the parties to settle the claims made by or
> against the litigant.

Fed. R. Civ. P. 11 [Advisory Committee Notes to the 1993 Amendment].  Thus, so

long as these basic requirements are met, the imposition of a penalty payable to the

court requires no additional due process protections and the imposition of such a

38

penalty does not rise to the level of a criminal proceedings.[21] *See also In re Yehud-Monosson USA, Inc.*, 472 B.R. 868, 877 (D. Minn. 2012), *aff'd sub nom. Isaacson v. Manty*, 721 F.3d 533 (8th Cir. 2013) ("Rule 11 sanctions are not the same as [criminal] contempt sanctions and do not require the same procedures."); *Wayland v. McVay (In re TByrd Enters.), LLC*, 354 Fed. Appx. 837, 839 (5th Cir. 2009) ("there is no legal basis for equating" Rule 11 sanctions and criminal contempt sanctions); *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 552 (9th Cir. 2004) (rejecting the necessity of criminal contempt protections in Rule 11 proceedings); *Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1137 (10th Cir.1991) (finding that Rule 11 sanctions do not require the procedures called for by Rule 42(b) of the Federal Rules of Criminal Procedure); *Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir. 1987) ("Nothing in the text of Rule 11 or in the Advisory Committee Note indicates that due process requires a court to follow the procedures called for by FED. R. CRIM. P. 42(b) for criminal contempt proceedings before it can impose a monetary sanction pursuant to Rule 11.")

---

[21]    A monetary sanction for failure to carry out [the] special responsibility as an attorney differs from the more severe infractions of criminal contempt for which attorneys and members of the general public can become liable. The former is an unjustified failure to carry out an administrative responsibility as an officer of the court; the latter is an affront to the authority of the judge.

*Miranda v. Southern Pac. Transp. Co.*, 710 F.2d 516, 519 (9th Cir. 1983).

Appellate Case: 20-2494     Page: 51     Date Filed: 01/19/2021 Entry ID: 4995647

This same approach to due process applies to a penalty imposed pursuant to a district court's inherent authority. An illustrative case is this Court's decision in *Isaacson v. Manty*, *supra*, 721 F.3d 533 (8th Cir. 2013). In *Isaacson*, a bankruptcy judge – after entering a show cause order – imposed sanctions (including a penalty paid to the court) on a non-party to the bankruptcy proceeding. The bankruptcy judge based his sanctions award on several different bases, including his inherent authority. On an ensuing appeal to this Court, the non-party argued "that the sanctions issued against her [were] criminal in nature, because the monetary penalty was punitive and not intended to compensate the court." *Id*. at 538.[22] Though the Court found there was a "criminal" aspect to the sanction (since the plaintiff "was not an attorney, a law firm, or a party), the Court did not require protections of criminal procedure:

> The court determined that [the non-party] caused the filing of papers that contained "unbelievably and unmitigatingly outrageous" assertions. This is the sort of contumacious conduct that is sanctionable under the court's inherent power. As [the non-party] received notice of the "precise ground for the imposition of sanctions" and an opportunity to be heard, we may consider whether the award should be affirmed based on the bankruptcy court's inherent power.

*Id*. at 539.

---

[22] With regard to the penalty portion of the bankruptcy judge's sanction order, the Court found that the penalty could not be justified under Rule 11 (or, more precisely, FED. R. BANKR P. 9011) since the plaintiff "was not an attorney, a law firm, or a party" *Id*. at 538.

Appellate Case: 20-2494    Page: 52    Date Filed: 01/19/2021 Entry ID: 4995647

The view that due process is limited to notice-and-opportunity-to-be-heard when a court sanctions an attorney under its inherent authority is entirely consistent with Supreme Court precedent. In its landmark criminal contempt case, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 114 S. Ct. 2552 (1994), the Court pointedly noted:

> Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings. For "serious" criminal contempts involving imprisonment of more than six months, these protections include the right to jury trial. <u>In contrast, civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.</u>

*Id*. at 826–27, 114 S.Ct. at 2556–57 (*emphasis added*).

## 2. The district court's sanctions orders did not violate Jordan's right to free speech or his right to petition the government for a redress of grievances.

Jordan argues that his sanctioned conduct was protected by both the Speech Clause and the Petition Clause of the First Amendment. APPELLANT'S OPENING BRIEF, at 27, 45-46. According to Jordan, he cannot be legally constrained when seeking to criticize public officers and/or in reporting supposed criminal activity.

41

For many years, an ongoing debate has been underway across the country concerning the Constitutional rights of attorneys to express opinions, criticisms and, in some cases, outright condemnation of either the judiciary as a whole or one judge in particular. *See*, *e.g.*, Margaret Tarkington, *The Truth Be Damned: The First Amendment, Attorney Speech, and Judicial Reputation*, 97 GEO. L.J. 1567-1638 (August 2009); Teri R. Day, *Speak No Evil: Legal Ethics v. the First Amendment*, 32 J. LEG. PROF. 161-98 (Spring 2008); W. Bradley Wendel, *Free Speech for Lawyers*, 28 HASTINGS CONST. L.Q. 301-444 (Winter 2001). *Compare* MODEL RULES OF PROF. CONDUCT, Rule 8.2, cmt. 1 (ABA 2007) (requiring lawyers to act and speak in ways that do not "unfairly undermine public confidence in the administration of justice."). However, even amidst this debate:

> There is little controversy regarding the power of judges to control and to restrict lawyers' speech in the courtroom. In furtherance of the proper administration of justice and fair judicial processes for litigants, judges' ability to conduct non-disruptive court proceedings trump attorneys' First Amendment rights to speak in court.

*Speak No Evil*, *supra*, at 163. *See also Free Speech for Lawyers*, *supra*, at 366 (court orders are "unproblematically regarded as a justifiable incident of the trial court's inherent power to regulate the proceedings before it, despite infringing on lawyers' speech"); *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071, 111 S. Ct. 2720, 2743 (1991) ("It is unquestionable that . . . during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed.").

42

In line with these rulings, courts have routinely concluded that sanctions (whether issued under Rule 11 or pursuant to a court's inherent authority) for frivolous or scurrilous pleadings are not protected by the First Amendment:

> Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.

*Bill Johnson's Rest., Inc. v. N.L.R.B.*, 461 U.S. 731, 743, 103 S. Ct. 2161, 2170 (1983) ("[T]here is no constitutional right to bring frivolous lawsuits."). *Accord King v. Fleming*, 899 F.3d 1140, 1151 (10th Cir. 2018) ("[T]he First Amendment is in no way a defense to Rule 11 violations."); *Geske & Sons, Inc. v. N.L.R.B.*, 103 F.3d 1366, 1372 (7th Cir. 1997) (unsubstantiated allegations "have no First Amendment protection."); *In re Leone*, 50 F.3d 15 [Table], 1995 WL 108974, op. at *2 (9th Cir. 1995); *Nat. Gas Pipeline Co. of Am. v. Energy Gath. Inc*., 2 F.3d 1397, 1410-11 (5th Cir. 1993); *Cheek v. Doe*, 828 F.2d 395, 397 (7th Cir. 1987).

Moreover, any rights that Jordan enjoys under the Speech clause and the Petitions clause of the First Amendment as an attorney were not infringed on by the district court's sanctions orders. The district court did not sanction Jordan for stating that Judge Smith was involved in criminal activity, it sanctioned Jordan for affirmatively asserting such a claim without a good faith basis. As succinctly noted by Judge Posner:

43

> A statement of positive fact is a representation not only
> that the fact is true as represented, but also that the
> person making the statement has a solid basis for making
> it. . . . The novelty in Rule 11 . . . is to require that
> statements in pleadings and other papers filed in court be
> substantiated by the lawyer (or litigant) signing the paper.
> A far older principle . . . requires that lawyers who make
> statements . . . concerning the conduct of fellow lawyers
> and judges and other participants in the administration of
> justice be scrupulous regarding the accuracy of those
> statements. A statement that is offered as a positive fact
> but actually is an extravagant inference from vague
> recollection does not satisfy this requirement. It is
> unprofessional, and thereby censurable.

*In re Kelly*, 808 F.2d 549, 551-52 (7th Cir. 1986).

Lawyers should and must be free to explore novel legal theories in defense of their clients and the advancement of such theories should not be thwarted merely because a judge finds them unpersuasive or inapplicable. But recognizing such leeway does not condone or authorize baseless and unsubstantiated attacks on the judiciary. The latter conduct lies well outside the ethical obligations of attorneys as officers of the court and well outside the protections afforded by the First Amendment.

44

**D.** **The district court did not err in imposing monetary sanctions and filing restrictions on Jordan in that the district court properly found that Jordan's filings were presented for an improper purpose, contained factual contentions that had no evidentiary support and were not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, and that Jordan was engaged in frivolous and abusive motion practice.**

A violation of Rule 11 occurs when an attorney files a pleading for any improper purpose (including, to harass or to cause needless increase in the costs of litigation). FED. R. CIV. P. 11(b)(1). Correspondingly, a Rule 11 violation is also established when an attorney files a pleading containing allegations or factual contentions that lack pre-filing evidentiary support. FED. R. CIV. P. 11(b)(3). In a similar vein, a district court has inherent authority to achieve the orderly and expeditious resolution of cases and, in so doing, assess whether and when an attorney's conduct has become not just "merely [a] disruption of court proceedings [but] disobedience to the orders of the Judiciary." *Chambers*, 501 U.S. at 44, 111 S.Ct. at 2133. Such authority broadly extends to "abuses of the judicial process." *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004)

The findings of the district court that Jordan violated Rule 11 and engaged in conduct that was sanctionable under the district court's inherent authority was proper were well within the district court's broad discretion and were not based "on a clearly erroneous assessment of the evidence." *Clark v. United Parcel Serv.*,

45

*Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006). *See also MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 624 (8th Cir. 2003) ("We will only reverse a sanction when the district court based its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence.").

As set out repeatedly *supra*, and as detailed in numerous district court orders, Jordan repeatedly used pleadings in this case to impugn the reputation of, first, Judge Smith, and later, Judge Phillips. Jordan charged the judges with the commission of federal crimes and dereliction of duties as well as participation in the most grievous of criminal conspiracies. When ordered to desist with such filings, Jordan persisted in repeating his claims in pleading after pleading. When asked to substantiate his claims with evidence, Jordan merely argued that the proof was in the judges not ruling in his favor. Such a situation – while thankfully rare – is not unheard of. As noted by this Court more than a century ago:

> Instead of being confined to a discussion of the questions arising on the record, and proper for consideration on this appeal, it contains page after page of denunciation and abuse of the two judges who decided these demurrers. It goes far beyond criticism or denunciation of the decisions. It is personal in its attacks upon the intelligence, integrity, and character of the judges. There are in it allegations of matters of a personal nature, in no manner connected with or suggested by anything in the record, and insinuations and charges against those judges in language which, speaking mildly, is not common among gentlemen. That this is an offense against the proprieties of professional life is not open to question. The matter thus poured into the brief is irrelevant and grossly scandalous.

46

*Kelley v. Boettcher*, 82 F. 794, 796, 27 C.C.A. 177 (8th Cir. 1897). As the Court concluded in *Kelley*, "No self-respecting court can, for a moment, think of tolerating such conduct." *Id.*

The standard for imposition of sanctions is generally that the conduct of an attorney was "objectively unreasonable." *Clark*, 460 F.3d at 1010. *See also Norsyn, Inc. v. Desai*, 351 F.3d 825, 831 (8th Cir. 2003). Inasmuch as sanctions' decisions are necessarily "fact-intensive, close calls," this Court affords considerable "[d]eference to the determination of courts on the front lines of litigation' because these courts are 'best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted." *Clark*, 460 at 1010 (*quoting MHC Inv.*, 323 F.3d at 624).

In light of Jordan's failure to substantiate his "criminal" charges with evidence, the district court properly found that Jordan's conduct was objectively unreasonable and violated FED. R. CIV. P. 11(b)(3) (filing pleadings containing allegations or factual contentions that lack evidentiary support). Likewise, Jordan's dogged persistence in filing such baseless pleadings after failing to substantiate his claims and after being order to cease such filings fully support a conclusion by the district court that Jordan violated FED. R. CIV. P. 11(b)(1) (filing pleading for the improper purpose of harassment).

Appellate Case: 20-2494     Page: 59     Date Filed: 01/19/2021 Entry ID: 4995647

Similarly, those actions, as well as Jordan's later utter refusal to abide by the district court's orders imposing filing restrictions, support the district court's finding that Jordan committed "misconduct during the litigation," improperly 'relitigated issues," and wrongfully multiplied the litigation. *Schlafly v. Eagle Forum*, *supra,* 970 F.3d 924, 936–38 (8th Cir. 2020). *See also In re Green*, 598 F.2d 1126 (8th Cir.1979) ("Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims."). Those findings all support the district court exercising its inherent authority to sanction an attorney. *Id*.

Moreover, the district court's decision that Jordan's conduct violated Rule 4-8.2 of the Missouri Rules of Professional Conduct was entirely appropriate. That rule states:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

Mo. Sup. Ct. R. 4-8.2(a). The Missouri Supreme Court, in construing this Rule, has found that it specifically applied when an attorney:

> Without any corroborative evidence, [the attorney] accused [a judge] of deliberate dishonesty. He accused the judge of purposefully ignoring the law to achieve his personal ends. His was not an implication of carelessness or negligence but of a deliberate, dishonest, conscious design on the part of the judge to serve his own interests.

48

*Matter of Westfall*, 808 S.W.2d 829, 837–38 (Mo. 1991).[23]

Inasmuch as the district court properly found conduct by Jordan that was objectively unreasonable and constituted violations under Rule 11 and violations supporting its exercise of its inherent authority, the district court had broad discretion in the choice of appropriate sanctions. *Cooter & Gell*, 496 U.S. at 400, 110 S.Ct. at 2447. In this case, the district court imposed several different forms of sanctions on Jordan, including:

(1)   $1,000 and $500 penalties payable to the district court,

(2)   filing restrictions requiring Jordan to obtain district court approval before filing pleadings in the case, and

(3)   referrals to state bar associations that had licensed Jordan to practice law.

The district court's imposition of these sanctions was entirely appropriate and consistent with the law and precedent.

---

[23]   Lawyers must execute their professional responsibilities ethically and pursuant to rules, carefully considered, in order to ensure the confidence of both litigants and the public. Statements by a lawyer impugning the integrity and qualifications of a judge, made with knowledge of the statements' falsity or in reckless disregard of their truth or falsity, can undermine public confidence in the administration and integrity of the judiciary, thus in the fair and impartial administration of justice.

*Matter of Westfall*, 808 S.W.2d at 835–36.]

49

As to the imposition of monetary penalties,[24] federal courts have noted that there are three "common themes govern[ing] the calculation of [such] sanctions, regardless of whether they are imposed under Rule 11 . . . or the court's inherent power." *Shire LLC v. Abhai, LLC*, 298 F. Supp. 3d 303 (D. Mass. 2018).

---

[24] The DOL acknowledges that under Rule 11, when a district court imposes monetary penalties *sua sponte*, the order is to be preceded by a show cause order. FED. R. CIV. P. 11(c)(3). In this case, the district court only entered a formal show cause order prior to the imposition of the first penalty. App. 26-30. Still the DOL asserts that the second penalty is also valid for three reasons:

(1)     when a party repeatedly ignores the orders of a district court, including an initial show cause order, it is unnecessary for the court to enter successive show cause orders so as to justify a penalty under Rule 11;

(2)     the district court "substantially complied" with the requirements of Rule 11(c)(3) for a show cause order by issuing successive orders warning Jordan that continued abuses of the litigation process would lead to further sanctions. *See*, *e.g.*, *In re Engle Cases*, 283 F.Supp.3d 1174, 1209 (M.D. Fla. 2017) (in light of attorney's ongoing improper conduct, "[i]ssuing a further show cause order . . . would be superfluous."); and

(3)     while Rule 11 requires a show cause order, penalties under a court's inherent authority do not and this Court has found "[e]ven where a court cites incorrect authority as the basis for contempt sanctions, we may consider alternative grounds for the imposition of those sanctions, so long as the court could have sanctioned the same conduct under another source of authority, the court's findings are adequate to meet the applicable standard, and the contemnor's due process rights are protected. *Isaacson*, 721 F.3d at 539.

50

(1)     district courts have broad discretion to determine the type
        and amount of a sanction,

(2)     monetary penalties are not imposed to compensate the
        opposing party but the district court itself and, as such, a
        court may, in its discretion, design a monetary sanction
        so that it compensates the public for the waste of judicial
        resources caused by an attorney's misconduct, and

(3)     in imposing monetary penalties, there must be a causal
        link between the amount of the sanction and the litigant's
        misbehavior.

*Id*. *See also In re Engle Cases*, *supra*, 283 F.Supp. 3d at 1251-53.  The two –

relatively small – penalties imposed on Jordan meet these criteria.[25]

Likewise, the district court's remaining sanctions – a filing restriction and

reporting its sanctions' order to the states licensing Jordan – were proper and

within the scope of the district court's discretion.  Indeed, in both cases, the district

court chose a less-restrictive sanction.

This Court, on numerous occasions, has upheld the sanction authority of a

district court to enjoin a plaintiff who has been found to have filed frivolous and

vexatious lawsuits from filing further actions without first obtaining leave of the

district court. *See*, *e.g.*, *Akins v. Neb. Court of Appeals*, 607 Fed. Appx. 606, 607

(8th Cir. 2015) (*per curium*); *Stebbins v. Stebbins*, 575 Fed. Appx. 705, 706 (8th

Cir. 2014); *Sassower v. Carlson*, 930 F.2d 583, 584–85 (8th Cir. 1991) (*per*

---

[25]     It should be noted that Jordan has not actually paid either penalty to
the Court.

Appellate Case: 20-2494     Page: 63     Date Filed: 01/19/2021 Entry ID: 4995647

*curium*); *Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981). *See also Day v. Day*, 510 U.S. 1, 2, 114 S.Ct. 4, 5 (1993) (*per curiam*) (court may impose filing restrictions where individual has filed numerous frivolous pleadings). Indeed, in this case, the district court did not even impose a broad filing restriction applying to future cases filed by Jordan, but only restricted Jordan from unilaterally filing pleadings in Talley's case.

Likewise, as made clear by Judge Phillips, the district court could have initiated proceedings to seek Jordan's disbarment or suspension from practice in the Western District of Missouri. However, rather than take that such an extreme step, the district court merely forwarded the various sanctions' orders to the two states where that had licensed Jordan to practice law – Kansas and New York. Such a referral was an entirely appropriate step by the district court. *See*, *e.g.*, *Judicial Attitudes Toward Confronting Attorney Misconduct*, *supra*, at 1437 ("Federal courts have the ability to refer serious misconduct to their own disciplinary apparatus or to the state body."); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1336 n.1 (11th Cir. 2002) (upholding sanctions imposed pursuant to the district court's inherent power that included, among other sanctions, reporting the actions of the disobedient attorney to the "Federal Bar and . . . the Grievance Committee of the Florida Bar"). Another court of appeals has explained why referrals by federal courts to state bars are a proper course:

Appellate Case: 20-2494     Page: 64     Date Filed: 01/19/2021 Entry ID: 4995647

On observing what appears to be misconduct by a member of the bar, this court traditionally has referred the matter to state officials. Although it may seem incongruous for federal judges to ask state officials to inquire into conduct in federal proceedings, three reasons underlie our approach. First, state bars are much larger than federal bars, and with size has come the development of the means to investigate charges of misconduct and resolve factual disputes. Second, for most attorneys federal cases represent a small portion of their practices, and what appears to the federal court to be an isolated incident may appear to the state bar to be part of a pattern of conduct with darker overtones. Or the reverse—what appears serious to the federal court may be the only blot on a clean record and therefore may not deserve discipline. Either way, the state bar has the superior perspective. Third, because principles of cooperative federalism have led the federal courts to extend members of the state bar an almost automatic right to practice in federal court, acts in federal court ought to be as salient to the state disciplinary officials as acts in state court. Cooperative federalism is reciprocal.

*Matter of Cook*, 49 F.3d 263, 265 (7th Cir. 1995).

The sanctions imposed by the district court in this case were imposed based on objectively unreasonable conduct by Jordan, were imposed after proper notice and opportunity-to-be-heard and/or desist and were reasonably and narrowly drawn to address the offending conduct. The sanctions should be upheld by this Court.

# XI.  Conclusion

For many years, Jordan has pursued the Powers email with an Ahab-like singlemindedness.  It is his belief that he is entitled to an unredacted copy of the document and, to that end, he has filed innumerable lawsuits – both in his own name and as an attorney.  In the course of that litigation history, Jordan has repeatedly run afoul of judges who did not share his views regarding the disclosability Powers email.

In this case, Jordan quite obviously disagrees with many of the substantive FOIA ruling made by the district court.  Such disagreements are part-and-parcel of most litigation.  However, attorneys simply cannot allow such disagreements and disappointments with judicial rulings to eclipse their obligations as officers of the court.  As succinctly noted by one federal court

> Proper procedures for challenging rulings that an attorney believes are wrong do not include filing an inappropriate response to a show cause order and then compounding that problem by contacting the judge *ex parte*. If [the attorney] believed that the rulings in the underlying [litigation] were based on errors of fact or law, his proper procedure was an appeal.

*In re Gleason*, 492 Fed. Appx. 86, 88 (11th Cir. 2012).  The baseless and unsupported allegations set out in Jordan's pleadings – as well as his repeated refusal to abide by court orders – violated Rule 11 and constituted conduct subject to sanctions under the district court's inherent authority.

54

The sanctions imposed by the district court against Jordan appropriately were "limited to what [would] suffice to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4). Those sanctions should be upheld by this Court. For the foregoing reasons, appellee the United States Department of Labor respectfully requests that the Court affirm the final judgment of the district court including the orders entered by the district court below on March 4, 2020, July 1, 2020, July 9, 2020, and July 20, 2020 sanctioning attorney Jack Jordan.

Respectfully submitted,

Timothy A. Garrison
United States Attorney

By      */s/ Jeffrey P. Ray*

Jeffrey P. Ray
Deputy United States Attorney
Missouri Bar No. 35632
Eighth Circuit Admission No. 95-0380

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
(816) 426-3130
FAX: (816) 426-3165
Jeffrey.Ray@usdoj.gov

ATTORNEYS FOR APPELLEE UNITED STATES DEPARTMENT OF LABOR

55

# XIII. Certificate of compliance

Pursuant to 8TH CIR. R. APP. P. 28A(h) and FED. R. APP. P. 28(a)(11), 32(a)(7)(C)[I], the undersigned Deputy United States Attorney hereby certifies that the forgoing BRIEF FOR APPELLEE complies with the Court's technical requirements for electronic versions of appellate briefs, including complying with the applicable type-volume limitation in that:

The BRIEF FOR APPELLEE was prepared utilizing Microsoft Office 365 software,

The electronic version of the BRIEF FOR APPELLEE is in a single document file, has been scanned for viruses and is virus-free, is in Portable Document Format ("*.pdf*") and has been converted to *.pdf* document from the original Microsoft Office 365 file,

The BRIEF FOR APPELLEE contains 12,957 words[26] as verified on Microsoft Office 365, and

The BRIEF FOR APPELLEE was prepared utilizing 14-point or larger proportionally spaced "Times New Roman" typeface.

*/s/ Jeffrey P. Ray*
Jeffrey P. Ray
Deputy United States Attorney

---

[26] The word count excludes the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, and certifications of counsel. FED. R. APP. P. 32(a)(7)(B)[III].

56

# XIV. Certification of electronic filing of the BRIEF FOR APPELLEE

Pursuant to 8TH CIR. R. APP. P. 28A(a), the undersigned Deputy United States Attorney hereby certifies an electronic version of the foregoing BRIEF FOR APPELLEE was filed with Clerk of the Court using the Court's CM/ECF system on this 15th day of January, 2021.

*/s/ Jeffrey P. Ray*
Jeffrey P. Ray
Deputy United States Attorney

Appellate Case: 20-2494     Page: 69     Date Filed: 01/19/2021 Entry ID: 4995647

## XV. Certification of mailing of paper copies of the BRIEF FOR APPELLEE

The undersigned Deputy United States Attorney hereby certifies that ten (10) true and correct paper copies the foregoing BRIEF FOR APPELLEE were sent to the office of the Clerk of the Court in compliance with the provisions of FED. R. APP. P. 25(a)(2)(B), and that one true and correct paper copy of the foregoing BRIEF FOR APPELLEE was placed in the United States first class mail, postage prepaid, addressed to:

Jack R.T. Jordan
6225 Northlake Drive
Parkville, Missouri 64125
jack.jordan@wmobilawyer.com

PRO SE CONTEMNOR/APPELLANT

on this _____ day of _____, 2021.[27]

_____
Jeffrey P. Ray
Deputy United States Attorney

---

[27] The mailings of the paper copies of the BRIEF FOR APPELLEE to the appellant and the Clerk of the Court are being completed within five days of the receipt of notice from the Clerk of the Court that the electronic version of the BRIEF FOR APPELLEE has been reviewed and filed. 8TH CIR. R. APP. P. 28A(d).

58
